308 Ga. 423
FINAL COPY

S20A0153. DRESBACH v. THE STATE.

PETERSON, Justice.

Irwin Clint Dresbach appeals his convictions for felony murder

and other crimes in connection with the shooting death of Jennifer

Gatewood.[1] Dresbach argues that his trial counsel was ineffective

---

[1] Gatewood was killed on April 5, 2014. In July 2014, a Fulton County grand jury indicted Dresbach for malice murder, two counts of felony murder (predicated on aggravated assault and possession of a firearm by a convicted felon), aggravated assault, possession of methamphetamine, possession of a firearm during the commission of a felony, and three counts of possession of a firearm by a convicted felon. The State nolle prossed one count of possession of a firearm by a convicted felon, and a jury found Dresbach guilty on the remaining counts following a December 2015 trial. The trial court sentenced Dresbach to life without parole on one felony murder count, an eight-year consecutive term to serve for possession of methamphetamine, a five-year consecutive probated term for possession of a firearm during the commission of a felony, and a five-year consecutive probated term on one count of possession of a firearm by a convicted felon. The trial court purported to merge the remaining counts. The State argues that the trial court made sentencing errors in Dresbach's favor, but it failed to file a cross-appeal and has failed to identify on appeal any exceptional circumstances requiring us to correct any errors. As a result, we decline to consider that issue. See *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017) (when the State fails to cross-appeal a sentencing error that benefits the defendant, we will exercise our discretion to correct the error only under exceptional circumstances). After entry of his sentence, Dresbach filed a timely motion for new trial in December 2015, and amended the motion through new counsel in February 2017. On January 16, 2019, the trial court denied Dresbach's motion for new trial following a

for failing to explain adequately the strength of the evidence against him, causing Dresbach to proceed to trial instead of accepting the State's plea offer. We affirm because Dresbach has failed to establish a reasonable probability that he would have accepted the State's plea offer but for trial counsel's alleged deficiency.

Viewed in the light most favorable to the jury's verdicts, the trial evidence showed the following. Dresbach had been convicted of at least six felonies, including possession of methamphetamine with intent to distribute. He was dating Gatewood in the spring of 2014. Gatewood and Dresbach were friends with Vicki Barfield, and the three friends would smoke methamphetamine together. On April 4, Gatewood and Dresbach checked into a hotel. A hotel employee sensed conflict between them and observed that Dresbach appeared angry or upset.

Barfield was with the couple when they checked in, visited them at least twice during the night, and returned sometime after

hearing. Dresbach timely appealed, and his case was docketed to this Court's term beginning in December 2019 and submitted for a decision on the briefs.

2:00 a.m. on April 5 to smoke methamphetamine with the couple. Barfield left around 3:09 a.m. and went to a nearby gas station to play video games. While Barfield was at the gas station, Dresbach called to ask Barfield to call 911. Dresbach sounded panicked and "hysterical," telling Barfield that he thought Gatewood had been shot and asking her to make sure Gatewood was okay and to tell Gatewood that he loved her. Barfield asked why Dresbach could not call 911, and he replied, "What are you trying to do, set me up?" Dresbach insisted that Barfield check on Gatewood and call 911, and he hung up when Barfield said she would. Barfield went to the hotel, knocked on the door, and, when there was no response, asked a hotel employee to let her in because she was concerned that Gatewood was hurt. Once inside, Barfield and the hotel employee found Gatewood's dead body. Gatewood died from a single gunshot wound to the chest.

Police located Dresbach two weeks later at another hotel, where he had checked in under a different name. Before arresting Dresbach, police noticed a gun in his waistband; Dresbach put the gun down when instructed. Dresbach's gun was submitted for

testing, and a GBI firearms examiner determined that the gun had fired the bullet that was recovered from Gatewood's body. The firearms examiner testified that a person had to apply 6.75 pounds of pressure on the trigger to fire the gun.

During a police interview in which Dresbach was advised of his *Miranda*[2] rights, as well as in his trial testimony, Dresbach admitted shooting Gatewood but claimed it was an accident. Dresbach testified that he had smoked methamphetamine with Gatewood and Barfield, had not slept for days, and was under the influence when he began to undress in the bathroom to join Gatewood in the shower. He claimed that he pulled his gun out of his waistband, had it in his hand when he took his shirt off, fumbled the gun, and accidentally pulled the trigger and shot Gatewood. Dresbach admitted that he had the gun on him throughout the night, including when he and Gatewood went to the store, and that he generally kept a round in the chamber whenever he had the gun on his person.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

1. Dresbach does not challenge the sufficiency of the evidence to support his convictions, but it is our customary practice in murder cases to review the record independently to determine whether the evidence was legally sufficient. Having done so, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Dresbach was guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Dresbach argues that his trial counsel was ineffective for failing to explain to him fully (1) the strength of the evidence against him and (2) Georgia law governing his asserted defenses, claiming that, had he been so advised, he would have accepted the State's plea offer of life with the possibility of parole. But Dresbach has not pointed to evidence sufficient to show that he would have accepted a plea offer even if counsel had advised him more fully about his case. Therefore, his ineffectiveness claims fail.

For Dresbach to prevail on any of his claims, he must satisfy the familiar standard of *Strickland v. Washington*, 466 U.S. 668, 687

(104 SCt 2052, 80 LE2d 674) (1984), which requires Dresbach to show both that his trial counsel's performance was constitutionally deficient and that he was prejudiced by this deficient performance. See *Mims v. State*, 304 Ga. 851, 854-855 (2) (823 SE2d 325) (2019). Because a defendant must satisfy both *Strickland* prongs, we need not conduct the *Strickland* inquiry in any particular order or even address both components of the test if the defendant makes an insufficient showing on one. *Strickland*, 466 U.S. at 697; see also *Lawrence v. State*, 286 Ga. 533, 533-534 (2) (690 SE2d 801) (2010).

Where, as here, a defendant claims that trial counsel's deficient advice led to the rejection of a plea offer, a defendant must show three things to establish prejudice:

> (1) that but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court, meaning that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances; (2) that the trial court would have accepted the terms of the negotiated plea; and (3) that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Yarn v. State*, 305 Ga. 421, 426 (4) (826 SE2d 1) (2019) (citations and punctuation omitted).

Dresbach argues that he was unaware that his own testimony virtually guaranteed a guilty verdict on the felony murder count predicated on possession of a firearm by a convicted felon, and that trial counsel led him to believe that he had a realistic chance of an acquittal or being found guilty on a lesser charge of voluntary manslaughter. Trial counsel testified at the motion for new trial hearing that they thought Dresbach had a viable accident defense to the felony murder charge despite his convicted felon status and thought the evidence supported a charge on involuntary manslaughter and a charge drawn from *Ford v. State*, 262 Ga. 602, 603 (1) (423 SE2d 255) (1992), that a "status felony," such as possession of a firearm by a convicted felon, is not inherently dangerous. Trial counsel admitted that without the requested jury

charges, which were denied by the court, the jury could find Dresbach not guilty of murder only by ignoring the law.[3]

Bypassing the deficiency prong, we conclude that Dresbach cannot establish prejudice because he has failed to show that he would have accepted a more favorable plea offer. See *Yarn*, 305 Ga. at 427-428 (4) (defendant failed to show he would have accepted plea offer when he failed to offer any direct evidence that he would); see also *Merzbacher v. Shearin*, 706 F3d 356, 366-367 (4th Cir. 2013) (a defendant must present credible evidence to establish a reasonable probability that he would have accepted a plea deal but for trial counsel's deficiency). It is undisputed that the State presented

---

[3] Although the jury was charged on accident, the parties acknowledge that, even if the jury could find that the shooting were accidental, the undisputed evidence amply supported a conviction for felony murder predicated on possession of a firearm by a convicted felon, given that Dresbach admitted that he was carrying a loaded and chambered gun while under the influence of methamphetamine and decided to remove the gun from his waistband while Gatewood was nearby. See, e.g., *Shivers v. State*, 286 Ga. 422, 423-425 (3) (688 SE2d 622) (2010) (whether status felony is inherently dangerous depends on the facts of the case); *Metts v. State*, 270 Ga. 481, 482-483 (1)-(2) (511 SE2d 508) (1999) (affirming felony murder conviction predicated on possession of a firearm by a convicted felon where defendant "pointed a loaded, cocked gun in the direction of a window, on the other side of which he knew there was a human being").

Dresbach with an offer to plead guilty and receive life with the possibility of parole. The State told the trial court that it informed trial counsel of the plea offer and that trial counsel responded that Dresbach was not interested in the offer. During a colloquy with the trial court, Dresbach stated that he was aware that he faced the possibility of life without parole if he was found guilty at trial, he discussed defenses with trial counsel, and he "absolutely" wanted to go to trial. The evidence contemporaneous with the plea rejection does not support Dresbach's claim now that he was interested in the plea offer. See *Yarn*, 305 Ga. at 427 (4) (noting that courts are to "look to contemporaneous evidence to substantiate a defendant's post hoc assertions that he would have chosen differently had counsel performed adequately" (citations and punctuation omitted)).

And evidence developed after trial does not support Dresbach's claim that his approach would have changed if only his counsel had better advised him. At the hearing, trial counsel testified that, despite the difficult facts presented in the case, Dresbach was not interested in pleading guilty to life with the possibility of parole,

because Dresbach found spending a minimum of 30 years in jail simply "unacceptable." See *Ellison v. State*, 299 Ga. 779, 781 n.1 (792 SE2d 387) (2016) (explaining that under OCGA § 17-10-6.1 (c) (1), a defendant sentenced to life for murder is required to serve at least 30 years before becoming eligible for parole). Trial counsel said Dresbach told him from "day one" that he was not interested in such a plea.

Despite the evidence showing that Dresbach was categorically opposed to accepting a life sentence with the possibility of parole, Dresbach maintains that there is a reasonable probability that he would have accepted such a plea had trial counsel more fully advised him of the strength of the evidence against him. But he offers nothing more than argument in support. See *Gramiak v. Beasley*, 304 Ga. 512, 516 (I) (C) (820 SE2d 50) (2018) ("Arguments and representations made in court briefs . . . do not constitute record evidence to support a finding of fact.").

Dresbach does not even cite his testimony at the motion for new trial hearing, likely because, as the State points out, his testimony

was equivocal and speculative as to whether he would have pleaded guilty. At the hearing, Dresbach merely said that he would have given the idea of pleading guilty "a lot more consideration," and there was a "good likelihood" that he would have accepted the plea offer. When asked again, Dresbach said it was "very possible" that he would have pleaded guilty. When asked to clarify whether "it's possible or you would?," Dresbach did not explain, but simply said, "yes."

The evidence contemporaneous with Dresbach's rejection of the plea shows that he never wanted to plead guilty, and his after-the-fact testimony is equivocal at best. Dresbach therefore cannot establish prejudice from any trial counsel deficiency, and his ineffective assistance claim fails.

*Judgment affirmed. Melton, C. J., Nahmias, P. J., and Blackwell, Boggs, Warren, Bethel, and Ellington, JJ., concur.*

DECIDED APRIL 6, 2020.
Murder. Fulton Superior Court. Before Judge LaGrua.
*Lauren B. Shubow*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Teri B. Walker, Richard B. Caplan, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.