**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 2, 2023**

# In the Court of Appeals of Georgia

A23A0793. GILMORE v. THE STATE.

WATKINS, Judge.

David Gilmore appeals from an order denying his motion for a new trial after a jury found him guilty of the misdemeanor offense of making harassing communications.[1] Gilmore argues that the evidence was not sufficient to support his conviction, that he was denied the effective assistance of counsel, that his right against double jeopardy was violated, and that the trial court erred in admitting evidence and instructing the jury. For the reasons set forth infra, we disagree and affirm the trial court's judgment.

---

[1] See OCGA § 16-11-39.1 (a) (1), (b).

Viewed in the light most favorable to the verdict,[2] the evidence shows that, on May 16, 2020, Gilmore took his dog to Dogwood Veterinary Hospital where Gilmore was a regular client. The dog had sores and maggots on her skin, and Dogwood's office manager, Shelby Tidwell, could smell the pet's rotting skin from another room. Gilmore was given an itemized list of recommended treatments and an estimate, which he decided was too expensive.

Following the visit and Gilmore's refusal of treatment, Tidwell reported the dog's condition and suspected neglect to Coweta County Animal Services. On May 22, 2020, Gilmore and Tidwell spoke over the phone. Gilmore became angry, eventually cursing at Tidwell and hanging up on her. Tidwell immediately sent Gilmore an e-mail advising him that Dogwood was firing him as a client.

Gilmore responded with an e-mail claiming that Dogwood could not refuse to provide treatment for the dog, contending that the vet was under an oath to provide adequate treatment. Tidwell responded to clarify the rule regarding the vet's responsibility under the code of conduct and affirmed that Dogwood could terminate Gilmore as a client. Tidwell advised Gilmore not to contact her or anyone else at

---

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

Dogwood again and that further communication from him would be considered harassing in nature.

On May 28, 2020, Gilmore e-mailed Tidwell, accusing her of making false accusations to animal services. Gilmore told Tidwell to "KEEP [her] mouth SHUT" about his pet, claimed he was writing an article about Dogwood for the local newspaper, and implied he would be seeking revocation of Dogwood's license to practice veterinary medicine. Tidwell responded, repeating her admonition that he stop communicating with Dogwood and informing him that she had not read his e-mail.

That same day, Tidwell contacted the police and gave a statement to the responding officer, as well as copies of the e-mail correspondence up to that point, and officers secured a warrant against Gilmore for harassing communications. Gilmore sent three additional e-mails to Tidwell on May 29, July 12, and August 14, 2020. The e-mails referenced accompanying court documents that were sent to Tidwell via certified mail on June 3, July 13, and August 14, 2020. The court documents, which had not been filed in any court, purported to sue Tidwell personally. On August 14, after receiving the third e-mail and court document, Tidwell filed a second police report. The officer took out a second warrant for

harassing communications, and Gilmore was accused on both accusations. A jury ultimately found Gilmore not guilty of the charge in the first accusation but guilty of the charge in the second accusation.

Through counsel, Gilmore filed a motion for new trial. His attorney also filed a motion to withdraw as counsel. Following a hearing, the trial court denied the motion for new trial and granted the motion to withdraw. The court found that counsel was no longer working as a public defender, allowed her to withdraw, and substituted another public defender. The trial court later allowed substitute counsel to withdraw as well, finding that Gilmore had waived his right to an attorney, but appointed substitute counsel to serve in a standby or advisory capacity for purposes of appeal.

In denying the motion for new trial, the trial court found that the verdict was neither against the weight of the evidence nor contrary to the principles of justice and equity. Additionally, even though OCGA § 16-11-39.1 did not require notice, there was written evidence both that Gilmore was put on notice that his conduct was considered harassing and that his conduct continued after receiving such notice. The trial court also found that the jury was properly instructed on intent and that there was "sufficient physical evidence" presented from which the jury could find intent. The

court found no error in the admission of photographs of the condition of Gilmore's dog both because there was no violation of the misdemeanor discovery requirements and because the condition of Gilmore's dog was well known to him and a material and relevant fact in the case. Finally, the court found that the trial judge properly denied Gilmore's motion in limine regarding admission of his later text messages to Tidwell, which were both material and relevant to Gilmore's overall conduct. This appeal followed.

1. Gilmore argues that the verdict is contrary to the evidence because he was not informed that he would be criminally charged if he did not cease and desist and because his purpose was only to redress a grievance.

In considering Gilmore's claim that the evidence was insufficient to support his conviction,

> we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the

5

defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*[3].[4]

Under OCGA § 16-11-39.1 (a) (1), "[a] person commits the offense of harassing communications if such person[,]" inter alia, "[c]ontacts another person repeatedly via . . . e-mail . . . for the purpose of harassing, molesting, threatening, or intimidating such person[.]" Gilmore repeatedly e-mailed Tidwell, despite Tidwell's insistence that he stop and that she found the e-mails harassing. Although Gilmore testified that he did not intend to harass Tidwell, the jury was entitled to disbelieve his testimony.[5] This evidence was sufficient to sustain his conviction,[6] and Gilmore's reliance on *McKenzie v. State*[7] is misplaced.

---

[3] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[4] (Additional citation and punctuation omitted.) *Maynard v. State*, 355 Ga. App. 84, 84-85 (1) (842 SE2d 532) (2020).

[5] See *Currington v. State*, 259 Ga. App. 654, 656 (578 SE2d 270) (2003) ("Jurors are in fact entitled to believe or disbelieve all or any part of the testimony of any witness; and, being the exclusive judges of the credibility of the witnesses, they may accept whatever evidence they deem most reasonable and credible. It is not for us to determine or question how the jury resolved any apparent conflicts or uncertainties in the evidence.") (citations and punctuation omitted).

[6] See *Maynard*, 355 Ga. App. at 86 (1).

[7] 279 Ga. 265, 266-267 (626 SE2d 77) (2005) (holding that OCGA § 46-5-21 (a) (1) was an unconstitutional content-based regulation of speech, in contrast with

2. Gilmore contends that he received ineffective of assistance of counsel because trial counsel allowed the evidence to be closed after only admitting one exhibit into evidence.

Although this issue was not raised in his motion for new trial, as amended, "when the record is sufficient, as here, an appellate court may decide ineffectiveness issues without remanding the case when the remand would waste judicial and legal resources and serve no useful purpose."[8] In order to establish ineffectiveness of trial counsel under *Strickland v. Washington*,[9] [Gilmore] must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense."[10] "Because a defendant must satisfy both *Strickland* prongs, [the reviewing court] need not conduct the *Strickland* inquiry in any particular order or even address both components of the test if the defendant makes an insufficient showing on one."[11]

---

OCGA § 46-5-21 (a) (2)-(4), which made certain conduct illegal when done with a specified intent).

[8] *Laredo v. State*, 253 Ga. App. 155, 157 (2) (558 SE2d 742) (2002).

[9] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 L E2d 674) (1984).

[10] *Stephens v. State*, 265 Ga. 120, 121 (2) (453 SE2d 443) (1995).

[11] *Dresbach v. State*, 308 Ga. 423, 425 (2) (841 SE2d 714) (2020).

Following the State's presentation of its case in chief, Gilmore informed the court that he did not wish to testify, and the defense presented testimony from one witness before announcing that the defense rested. At the conclusion of the charge conference that immediately followed and outside the presence of the jury, the trial court allowed Gilmore to express his concerns with his representation and specifically that he believed he had "cause for a mistrial [because he had] a mountain of evidence that should have been submitted[.]"

The trial court ultimately reopened the evidence so that Gilmore could testify and tender his exhibits. Eight additional exhibits were admitted into evidence, and the court sustained the State's objections to the admission of six exhibits, one of which was a duplicate of an exhibit that had already been admitted.

Gilmore does not argue that the excluded evidence was actually admissible but instead complains that the evidence was initially closed with the defense only having one exhibit admitted. Because Gilmore has failed to support his claim that he was prejudiced by counsel's purportedly deficient performance with any citation to relevant legal authority, it is deemed abandoned.[12] Moreover, he has not established

---

[12] See Court of Appeals Rule 25 (d) (2); *Sevostiyanova v. State*, 313 Ga. App. 729, 738 (11) (e) (722 SE2d 333) (2012).

8

that he was prejudiced by this sequence of events. Accordingly, his claim of ineffective assistance of counsel is without merit.[13]

3. Gilmore argues that the filing of two separate accusations, each containing one charge of harassing communications, violated his right against double jeopardy because the accusations were based on one continuous crime.

"The doctrine of double jeopardy has two components: the 'procedural' bar on double jeopardy, which places limitations on multiple prosecutions for crimes arising from the same conduct, and the 'substantive' bar, which protects against multiple convictions or punishments for such crimes."[14]

To the extent that Gilmore raises a procedural double jeopardy claim, he waived it by failing to raise it in a plea in bar.[15] Moreover, such claim is inapplicable

---

[13] See *Dresbach*, 308 Ga. at 425 (2).

[14] (Citations and punctuation omitted.) *Williams v. State*, 307 Ga. 778, 779 (1) (838 SE2d 235) (2020).

[15] See OCGA § 17-7-110 ("All pretrial motions, including demurrers and special pleas, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court."); *Schrader v. State*, 364 Ga. App. 631, 635 (2) (c) (876 SE2d 60) (2022) ("[E]ven before the enactment of OCGA § 17-7-110, the failure to timely file a plea in bar based on procedural double jeopardy waived the issue.").

because the State prosecuted both accusations in a single prosecution.[16] Because Gilmore was only convicted of one of the two counts charged, his substantive double jeopardy claim also fails.[17]

4. Gilmore contends that the trial court erred in allowing into evidence photographs of his dog because their probative value was substantially outweighed by the danger of unfair prejudice.

As the State points out in response, Gilmore did not raise this issue at trial; he objected to the photos only on the ground that they had not been provided in discovery.[18] Thus, we review only for plain error.[19]

---

[16] See *Maxwell v. State*, 311 Ga. 673, 676-678 (2) (859 SE2d 58) (2021).

[17] See *Johnson v. State*, 313 Ga. 155, 157 (3) (868 SE2d 226) (2022) ("Substantive double jeopardy law protects a defendant from multiple punishments when his crimes arise from the same conduct.").

[18] Because Gilmore does not argue on appeal that the photographs should not have been admitted because of the State's failure to provide them in discovery, we do not address the objection he raised below. See *Hood v. State*, 309 Ga. 493, 499 (2) (847 SE2d 172) (2020) (where the defendant did not argue that the State failed to meet its burden on one part of a three-part test, the court addressed only the other two parts). In Division 5, however, we address a related discovery argument.

[19] See *Albright v. State*, 354 Ga. App. 538, 549 (4) (841 SE2d 171) (2020) ("[W]e only analyze whether admission of this evidence constituted plain error, because although [the defendant] objected, he did so on a different ground from the one argued on appeal".).

To show plain error, [Gilmore] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings. The third component of this test requires the appellant to make an affirmative showing that the error probably did affect the outcome below. Satisfying all four prongs of this standard is difficult, as it should be.[20]

Here, Gilmore has failed to make such a showing. Tidwell testified that when Gilmore dropped off the dog, she "was in really bad shape. [She] had sores all over [her] body, [her] chin, [her] eyes, all on [her] hind quarters. . . . [T]he smell of the dog . . . permeated the whole office, it was so bad. The . . . skin was basically rotting on the dog." Tidwell called Animal Services to see if Dogwood was "blowing it out of proportion" or if the situation should be reported. Tidwell testified further that she took photographs to send to Animal Services and that the photographs accurately depicted the dog's appearance when Gilmore brought her to Dogwood.

---

[20] (Citations and punctuation omitted.) *Lupoe v. State*, 300 Ga. 233, 243 (4) (794 SE2d 67) (2016).

Viewed in context, "the admission of the [photographs] was not a blatant abuse of discretion under OCGA § 24-4-403 [(Rule 403)[21]] that would qualify as clear or obvious error."[22] "Rule 403 is an extraordinary remedy, which should be used only sparingly, and the balance should be struck in favor of admissibility. Thus, in reviewing issues under Rule 403, [courts] look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact."[23] The photographs at issue here were probative to provide context for the underlying dispute between the parties, particularly in light of Tidwell's testimony describing the condition of the dog. Further, it is Gilmore's burden to prove trial court error using the appellate court record, and we cannot say from the black-

---

[21] "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403.

[22] (Citation and punctuation omitted.) *Strother v. State*, 305 Ga. 838, 848 (4) (d) (828 SE2d 327) (2019); see also *Maynard*, 355 Ga. App. at 87-88 (2) (holding that the trial court did not abuse its discretion in allowing the State, over objection, to present testimony of the victim of harassing communications that he had obtained temporary protective orders both for himself and for his client in a child support dispute with the defendant).

[23] (Citations and punctuation omitted.) *Strother*, 305 Ga. at 847 (4) (d).

and-white copies of the photographs in the record that the evidence was unduly prejudicial.[24]

5. Gilmore argues that the trial court erred in denying his motion in limine to exclude any evidence referencing communications made after May 28, 2020.

In the motion, Gilmore complained that, despite the accusation specifying May 29, 2020, as the date Gilmore allegedly contacted Tidwell, the State had "failed to provide [in discovery] any communications that may have occurred between [Gilmore] and [Tidwell] which may have occurred after May 28, 2020[.]" The trial court denied the motion and subsequently found no error in that ruling when Gilmore raised the issue in his motion for new trial.

"In reviewing a trial court's decision whether to impose sanctions or take other corrective action as a result of the State's failure to comply with its discovery obligations, the appropriate standard of review is whether the trial court abused its

---

[24] See *Lewis v. State*, 314 Ga. 654, 663 & n. 6 (3) (b) (878 SE2d 467) (2022).

discretion."[25] "[W]e will affirm the trial court's denial of appellant's motion for new trial under the 'right for any reason' rule if the ultimate judgment was correct."[26]

In misdemeanor cases, the State is obligated to comply only with the discovery requirements set forth in OCGA § 17-16-20 et seq. "The discovery provisions applicable to misdemeanor prosecutions are not the same as those applicable to felony prosecutions. In a misdemeanor case, the elective, optional mutual discovery provisions of OCGA § 17-16-1 et seq. are not available."[27] Copies of allegedly harassing communications "are not among the discoverable material in misdemeanor cases, which include a copy of the indictment or accusation, a witness list if requested, in-custody statements, and written scientific reports."[28] Consequently, we

---

[25] (Citation and punctuation omitted.) *Romero v. State*, 247 Ga. App. 724 (545 SE2d 103) (2001) (holding that the trial court did not abuse its discretion under OCGA § 17-16-6, applicable to felony cases, when it admitted into evidence two fingerprint cards that had not been produced in discovery); see also *Mowery v. State*, 234 Ga. App. 801, 802 (2) (507 SE2d 821) (1998) ("The law does not favor exclusionary rules; they hinder the search for truth.").

[26] (Citation and punctuation omitted.) *Arellano-Campos v. State*, 307 Ga. App. 561, 568-569 (2) (a) (705 SE2d 323) (2011).

[27] (Citation and punctuation omitted.) *Brooks v. State*, 267 Ga. App. 663, 664 (1) (600 SE2d 737) (2004).

[28] *Ford v. State*, 285 Ga. App. 106, 109 (2) (645 SE2d 590) (2007); see also OCGA §§ 17-16-20 to 17-16-23.

see no reversible error in the trial court's denial of GIlmore's motion in limine based on the State's failure to turn over these e-mails.

Additionally, although Gilmore states in his brief that the State was required to produce exculpatory materials under *Brady v. Maryland*,[29] he has offered no argument or citation of authority to support a claim of a *Brady* violation, and we thus conclude that any *Brady*-related issue has been abandoned.[30] We do not consider Gilmore's cursory argument that a standing order required the State to comply with the discovery requirements set forth in OCGA § 17-16-1 et seq.[31]

6. Gilmore contends that the trial court erred in failing to instruct the jury on knowledge and in failing to define harassing communications.

---

[29] 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963).

[30] See Court of Appeals Rule 25 (d) (1); see also *McGarity v. State*, 311 Ga. 158, 169 (4) (856 SE2d 241) (2021) (applying Supreme Court Rule 22 to hold that the appellant had abandoned his claim of a *Brady* violation).

[31] See Court of Appeals Rule 25 (d) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

Because Gilmore failed to preserve any objections to the jury charge, we review these arguments only for plain error.[32] "Reversal based on plain error is authorized if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings."[33]

(a) Gilmore first contends that the trial court erred in failing to instruct the jury on knowledge, which he contends is a statutory requirement, citing OCGA § 16-11-39.1 (a) (4).

This argument is without merit as Gilmore was charged under OCGA § 16-11-39.1 (a) (1), not (a) (4). Specifically, the accusation charged that "on or about May 29, 2020, . . . Gilmore did email [Tidwell] repeatedly, for the purpose of harassing said person[.]" OCGA § 16-11-39.1 (a) provides in relevant part:

A person commits the offense of harassing communications if such person: (1) Contacts another person repeatedly via telecommunication, e-mail, text messaging, or any other form of electronic communication for the purpose of harassing, molesting, threatening, or intimidating such

[32] See OCGA § 17-8-58 (b); *Wynn v. State*, 313 Ga. 827, 835 (3) (874 SE2d 42) (2022).

[33] (Citations and punctuation omitted.) *Tremblay v. State*, 329 Ga. App. 139, 142 (2) (764 SE2d 163) (2014).

person or the family of such person; or . . . (4) Knowingly permits any device used for telecommunication, e-mail, text messaging, or any other form of electronic communication under such person's control to be used for any purpose prohibited by this subsection.

Had Gilmore been charged under OCGA § 16-11-39.1 (a) (4), an alternate method of violating the statute, the State would have had to prove that he knowingly allowed someone else to send an electronic communication for a prohibited purpose. Instead, the State charged Gilmore under § 16-11-39.1 (a) (1) as the person who made the harassing contact, thus obviating the need to show knowledge of a third person's conduct. The trial court properly instructed the jury on intent, and the jury charge, taken as a whole, was not plain error.[34]

(b) Gilmore also contends that the trial court should have charged the jury that OCGA § 16-11-39.1 "shall not apply to constitutionally protected speech."[35]

At trial, Gilmore testified that his purpose in sending the e-mails was not to harass but "was just trying to resolve a civil matter" before filing suit. He did not raise a First Amendment defense at trial or allow his attorney to give a closing argument.

---

[34] See *Showers v. State*, 353 Ga. App. 754, 761 (2) (c) (839 SE2d 245) (2020).

[35] See OCGA § 16-11-39.1 (e).

17

"Regardless of whether any of the other prongs were satisfied, [Gilmore] has failed to show plain error in this case because he cannot demonstrate that the alleged error in the jury charge likely affected the outcome of the proceedings."[36] "Because this record supports a determination that [the First Amendment] was not [Gilmore's] sole defense, the trial court did not commit clear or obvious error when it failed to charge the jury on that defense in the absence of a request."[37]

7. Finally, Gilmore contends that the cumulative effect of deficient performance of counsel and error by the trial court were prejudicial. "To establish cumulative error, [Gilmore] must show that (1) at least two errors were committed in the course of the trial; and (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied [Gilmore] a fundamentally fair trial."[38] "When reviewing such a claim, [the appellate court] evaluate[s] only the effects of matters determined to be error, not the cumulative

---

[36] *Tremblay*, 329 Ga. App. at 142-143 (2).

[37] *Cobb v. State*, 356 Ga. App. 187, 189 (2) (843 SE2d 912) (2020).

[38] (Citation and punctuation omitted.) *Flood v. State*, 311 Ga. 800, 808 (2) (d) (860 SE2d 731) (2021).

18

effect of non-errors."[39] And, in considering cumulative prejudice, "[the reviewing court] bear[s] in mind the relevant standards for the errors at issue."[40]

"[A]s explained above, [Gilmore] has failed to establish any trial court errors or instances in which trial counsel was professionally deficient. Accordingly, there are no errors to aggregate, and his claim of cumulative error also fails."[41]

*Judgment affirmed. Barnes, P. J., and Land, J., concur.*

---

[39] (Citation and punctuation omitted.) *Cox v. State*, 306 Ga. 736, 743 (2) (e) (832 SE2d 354) (2019).

[40] *State v. Lane*, 308 Ga. 10, 21 (4) (838 SE2d 808) (2020).

[41] (Citation and punctuation omitted.) *Blocker v. State*, 316 Ga. 568, 583 (5) (889 SE2d 824) (2023).